Finis Eugene TOOMER, Jr. *v.* STATE of Arkansas

CR 77-242                                        566 S.W. 2d 393

Opinion delivered June 5, 1978
(In Banc)

*David J. Potter,* of *Potter & Potter,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty.
Gen., for appellee.

CONLEY BYRD, Justice. Appellant Finis Eugene Toomer,
Jr., was charged with rape, November 23, 1976. He was
arraigned December 8, 1976, and the trial date was set for
January 12, 1977. On the latter date the trial was continued
at his request until April and again continued until June 1,
1977. The jury returned a verdict of guilty and fixed his
punishment at 5 years in the Department of Corrections.
Prior to his trial appellant had the benefit of $10,000 property
bond executed by his relatives. Following his conviction

appellant has remained free on a $15,000 property bond executed by his relatives. After obtaining the full 7 month extension for obtaining a transcript, appellant did not furnish the $1,500 necessary to obtain a copy of the transcribed testimony from the court reporter. Shortly before the 7 months extension expired, appellant, December 8, 1977, made application to the trial court and this court to obtain the record as an indigent. We reinvested the trial court with jurisdiction to hear the application and extended the time for appeal until the matter could be heard and determined. The trial court after hearing the testimony of appellant, his father and the court reporter denied appellant's application to proceed as an indigent. Appellant appeals from that ruling. For the reasons hereinafter set forth, we affirm the trial court.

The record shows that appellant was represented by employed counsel from the beginning. Throughout the time following the conviction on June 3, 1977, until the application for indigency was filed the employed lawyer kept appellant informed of the necessity of obtaining the transcribed testimony and that the court reporter was demanding a deposit of $1500 to start the transcribing.

Appellant testified that he became 19 on January 10, 1978, and that following his conviction he had only earned $422.40 from Texas Steel Company, and $150.00 from his present employer, Mr. Mike Powell. He had depended on the members of his family to help him raise the appeal money, but they never did come up with the money. He did not know that he could apply to take an appeal as an indigent until shortly before his application on December 8, 1977. Appellant says that his father paid for his defense at trial. He thought it was around $3,000.00. Appellant's mother and father are divorced. The mother is drawing disability from Social Security as a result of a sleeping disease. Appellant has lived with his father since the charges were brought and is not paying rent. He admittedly is an able bodied young man.

Appellant's father testified that he was earning $1200 per month and that he had borrowed all the money he could get from his employer to pay the $3,000 for appellant's trial defense. His three children, ages 20, 19 and 17 lived with him in a rented apartment. The father had tried to borrow the

money to pay for appellant's appeal but had been unable to obtain it. The father testified that appellant had lived with him following the conviction. During that time appellant had worked something like seven weeks. In response to questions from the court, the father stated that appellant's activities during the day were not much. Appellant would go up to a service station, stay up there with the father's brother-in-law, and appellant would visit with his mother some.

Needless to say, there is evidence from which the trial court could have found that appellant qualified as an indigent. On the other hand we see an able bodied young man, a high school graduate, who has worked only seven weeks from June 3, 1977, the date of his conviction, until January 11, 1978, while living with his father, rent free. Furthermore, the record shows that during all of this time appellant has enjoyed the advantages of remaining free on a $15,000 bond posted by his relatives. Since the trial court had the advantage of viewing the witnesses and in view of the indicia of wealth that appellant has enjoyed following his conviction, together with the tardiness of the application, we cannot say that the trial court abused his discretion in denying appellant's application to proceed as an indigent on appeal.

Courts like Caesar's wife must be above reproach in not only the eyes of the appellant and his family but also those of the rape victim and her family. The longer an appellant enjoys his freedom from a conviction through the luxury of that which is an indicia of wealth, the more suspect becomes a belated assertion to his peers that he is in fact an indigent.

Affirmed.

HOWARD, J., dissents.

GEORGE HOWARD, JR., Justice, dissenting. I am compelled to dissent from the holding of the majority in this case inasmuch as it is clear from the majority's opinion that a new and irrelevant dimension has been considered in determining whether one is entitled to proceed *in forma pauperis* in a criminal proceeding.

Among other things, the appellant alleged in his motion, in order to be declared an indigent to the end that the State be required to provide the cost of a transcript and that an attorney be appointed to represent him in his appeal to this Court, the following relevant parts:

"That Finis Eugene Toomer, Jr. is 18 years of age. . . . That the Defendant was convicted of the felony offense or rape . . .

"The Court Reports, . . . has requested $1,500.00 advancement on the cost of the transcript in this cause and the Defendant has nothing to pay toward that transcript.

"That Defendant is indigent and cannot pay the cost of the appeal in this case. He is unemployed and has been for more than four months, although he has diligently sought employment. The outstanding conviction has hindered his employment opportunities and the Defendant has found it impossible to obtain employment or any other means to raise the money to pay the cost of appeal."[1]

The trial court in denying appellant's request to appeal his conviction as an indigent, made the following findings:

"The Court Reporter . . . made demand on the defendant's attorney on several occasions between June 3, 1977, and December 9, 1977, requesting permission for her to proceed with the transcript of the evidence in this case. The defendant's attorney, at all times, advised . . . not to start the transcript until such time as his client was in a position to pay for it.

"On December 9, 1977, the defendant, through his attorney, filed a motion in this Court alleging that he was an indigent, that the State be directed to provide the cost of the transcript, and that an attorney be appointed to represent him in this appeal.

---

[1]Appellant duly executed and filed his affidavit in support of his request to proceed *in forma pauperis* which clearly supports his claim of indigency.

"The Court finds that the appeal for indigency was not filed for more than one (1) year after this cause was originally filed in the Little River County Circuit Court; that the appeal for indigency pertaining to the appeal was not filed for more than six (6) months after notice of appeal had been granted and only some fifteen (15) working days before the expiration of the maximum time of seven (7) months allowed for an appeal to be taken. The Court finds that the transcript could not have possibly been prepared by the Court Reporter and completed by the Clerk within the said fifteen (15) working days."

The action of the trial court in denying appellant's motion to appeal *in forma pauperis* or as an indigent gives more recognition to timing[2] than to constitutional rights.[3] The attitude and action of the trial court is comparable in many respects where form, in legal proceedings, is indefensibly raised to the lofty position of substance.

It is so basic and fundamental under American jurisprudence that a right of constitutional dimension can be asserted at any stage of a legal proceeding, unless it is clear and certain that a waiver of such constitutional right has been knowingly, understandingly and intelligently made, that it is proper to characterize such a principle as elementary.

In sustaining the trial court's action, which in effect forecloses appellant from appealing his conviction, the majority makes the following observation in its opinion:

"Needless to say, there is evidence from which the trial court could have found that appellant qualified as an indigent. On the other hand we see *an able bodied young man*, a high school graduate, who has worked only seven weeks from June 3, 1977, the date of his conviction, until January 11, 1978, while living with his father, rent free.

---

[2]It is beyond contradiction that the record shows plainly that appellant is an indigent.

[3]*Griffin* v. *Illinois,* 351 U.S. 12 (1955) and *Douglas* v. *California,* 372 U.S. 353, are leading United States Supreme Court cases requiring the State to provide counsel and transcripts at the cost of the State for indigent defendants on appeal.

Furthermore, the record shows that during all of this time appellant has enjoyed the advantages of remaining *free* on a $15,000 bond posted by his relatives. Since the trial court·had the advantage of viewing the witnesses and in view of the indicia of wealth that appellant has enjoyed following his conviction, together with the tardiness of the application, we cannot say that the trial court abused his discretion in denying appellant's application to proceed as an indigent on appeal." (Emphasis added)

It is readily apparent that the majority has now created a new and irrelevant criterion in determining whether one may or may not qualify as an indigent, namely, "able bodied young man," but it goes without saying, indigency neither favors the old over the young, nor the weak over the strong. If ablebodiedness is a factor to be considered in determining whether one pursues an appeal *in forma pauperis*, very few, indeed, would meet the test.[4] I, therefore, dissent.

---

[4]The trial court found that the transcript could not have possibly been prepared by the court reporter since there were only fifteen working days remaining before the maximum time of seven months allowed for an appeal to be taken. In *West v. Smith*, 224 Ark. 651, 278 S.W. 2d 126, we held that this Court under its inherent constitutional power may allow a transcript to be filed after the time fixed by the statute.